FILED

March 4, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:44 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: ALICE HOBAUGH-MENDEZ**

**DOCKET NO. 2014-05-0027**

**STATE FILE NO. 71599-2014**

**EMPLOYER: SUNOCO/TIGERMARKET SOUTHSIDE OIL**

**DOI: AUGUST 12, 2014**

**JUDGE: BAKER**

**INSURANCE CARRIER: ACE AMERICAN**

### EXPEDITED HEARING ORDER

THIS CAUSE came before the Court upon the Request for Expedited Hearing filed on January 20, 2015, by Alice Hobaugh-Mendez pursuant to Tennessee Code Annotated section 50-6-239. The Court convened an in-person evidentiary hearing on February 11, 2015. Attorney Marc Walwyn represented Ms. Mendez and attorney David Deming represented the employer, Sunoco/Tigermarket/Southside Oil (Tigermarket). Upon review of Ms. Mendez's request for expedited hearing, the evidence presented at the hearing, and in consideration of the applicable law, the Court enters the following order holding that Ms. Mendez is not entitled to temporary disability or medical benefits.

### Issues

Ms. Mendez seeks temporary disability and medical benefits. The propriety of awarding benefits depends upon the resolution of one central issue: whether Ms. Mendez suffered an injury arising primarily out of and in the course and scope of her employment for Tigermarket.

### Evidence Submitted

The Court accepted the following exhibits into evidence:

A. Wage Statement
B. First Report of Injury
C. Still Photographs of Surveillance Footage
D. Employee Discipline Notice

1

E. Affidavit of Alice Hobaugh
F. Panel of Physicians
G. Claim Denial Letter
H. Deposition transcript of Faith Smith
I. Initial incident report form
J. Video recording of Accident
K. Video recording of All Surveillance Cameras on date of Accident
L. Medical records of Concentra
M. Medical records of Viola Chen

## History of Claim

Ms. Mendez worked as a manager of the Tigermarket store located on Shelby Avenue in Nashville, Tennessee. On August 12, 2014, Ms. Mendez fell while walking down a store aisle. Ms. Mendez testified that she stepped with her left foot into the grout line and, when she did so, her ankle rolled causing her to fall.

The store's video surveillance equipment captured the fall. The video shows Ms. Mendez walking across the floor in the area next a hot-food self-service station. (Exh. J at 15:34:42)[1]. As she passes by the front door of the store, Ms. Mendez turns her head to look out while continuing to traverse down the aisle. *Id*. at 18:34:46. Ms. Mendez rotates her head back so that she is looking forward and slightly up. *Id*. at 18:34:47. She then takes two more steps and, as she places her left foot on the floor, her ankle appears to "roll" and she pitches forward onto the floor landing on her right knee and elbow. *Id*. at 18:34:49. After falling, Ms. Mendez rolls over into a seated position and grabs her right knee. *Id*. at 18:34:51. Ms. Mendez remains on the floor for several seconds before pulling herself up and walking to the back of the store clutching her back in the area just above her left hip. *Id*. at 18:35:04 to 18:35:18. While walking to the back of the store, Ms. Mendez has a brief exchange with another employee working behind a food service line. About eight minutes later, Ms. Mendez reemerges from the back of the store holding her purse. *Id*. at 18:43:00. She then walks to the front of the store and stays there for a couple of minutes. She then comes back to the area by the food service line, has a brief conversation with a couple of store employees and leaves. *Id*. at 18:44:15 to 18:44:32.

Other than the recording of incident itself, Exhibit J shows the actions of others in the area of the store where Ms. Mendez fell. Early on the video, another Tigermarket employee swept the floor in the area where Ms. Mendez would fall twenty minutes later. (Exh. J at 15:17:56-15:18:07). While sweeping the floor, the broom passed directly over the grout line that Ms. Mendez cited as a hazard. *Id*. at 15:18:01. Several minutes after Ms. Mendez fell, the video shows another Tigermarket employee pushing a four-wheeled cart loaded with sodas directly over the area where Ms. Mendez fell. The cart passed over the area Ms. Mendez cited as a hazard and one wheel appeared to pass directly over the grout line. *Id*. at 15:46:56 to 15:46:59.

At the hearing, Ms. Mendez testified that there were no hazardous items such as grease,

---

[1] The video contains a marker noting the hour, minute and second that the action occurred. The citations to the video follow this format: hr:min:sec.

spilled soda, or food on the floor in the area where she fell. Ms. Mendez stated that many of the tiles in the store were broken and that the grout line in the area where she fell was approximately ¾ of an inch wide. When cleaning the floor, Ms. Mendez testified that she and other employees used a deck brush to clean the grout and that the floor became "gummy" with some of the grout coming up in "chunks."

Sandra Patterson, the acting area manager for Tigermarket and Ms. Mendez's direct supervisor, testified on Tigermarket's behalf concerning the condition of the store.[2] Ms. Patterson visited Ms. Mendez's store on August 27, 2014, a little more than two weeks after the accident. Ms. Patterson stated that she did not see any damaged tile in the area where Ms. Mendez fell. Ms. Patterson admitted that some of the tiles near the entrance of the store were cracked and that Tigermarket solicited bids from vendors to repair the tile.

In addition to testimony concerning the condition of the floor, Exhibit K contains surveillance video from all cameras in the store on the date of the accident. In the video, camera 4 shows the area around the front of the store. (Exh. K). Although the picture is not high-definition quality, the damaged tile near the entrance of the store is clearly visible. (Exh. K). Camera 2 also shows damaged tile. (Exh. K).

### Employee's Contentions

Ms. Mendez alleges that she suffered a compensable workplace injury and is entitled to temporary disability and medical benefits.

### Employer's Contentions

Tigermarket denies that the claim is work related and, maintains that the injury is idiopathic in nature and, therefore, not compensable.

### Findings of Fact and Conclusions of Law

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show that the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

*Factual Findings*

---

[2] Ms. Patterson testified to other matters as well. In addition to Ms. Patterson, Brad Adams, a Tigermarket executive, also testified on behalf of the employer. Because the Court determined that the remaining testimony provided by these witnesses did not affect the Court's decision, the Court not recounted their testimony here.

The Court finds that Ms. Mendez fell while walking through the front area of the Tigermarket store on August 12, 2014. The Court finds that a special hazard did not contribute to the fall.

*Application of Law to Facts*

In order to receive temporary workers' compensation benefits in a pretrial setting, the employee must show that he is likely to prevail at a trial on the merits of his claim. *See McCall*, 100 S.W. 3d at 214. An "injury" or "personal injury" by accident is compensable whenever "the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id.* (internal quotations omitted). In Tennessee, there is no formula that clearly defines the line between accidents and injuries, which arise out of and in the course of employment and those, which do not. Instead, each case must be decided with respect to its own attendant circumstances and not by resort to some formula. *Bell v. Kelso Oil Co.,* 597 S.W.2d 731, 734 (Tenn. 1980).

It is well established that the mere presence of the employee in the workplace at the time the injury occurs will not result in the injury being considered as arising out of the employment. Instead, the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Thornton v. RCA Serv. Co.,* , 955 (Tenn. 1949). For example, the Supreme Court affirmed the trial court's decision to deny recover to an employee who suffered from a pre-existing spinal condition which caused his legs to tire and go numb, when he fell at work. *See Greeson v. Am. Lava Corp.,* 392 S.W.2d 931, 935 (Tenn. 1965). In fact, "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle or step, in addition to the injured employee's ambulation." *Wilhelm v. Krogers,* 235 S.W.3d 122, 128-29 (Tenn. 2007). Furthermore, idiopathic injuries—those with an "unexplained origin or cause"—do not arise out of the work unless there is "some condition of the employment that presents a peculiar or additional hazard." *Veler v. Wackenhut Serv's, Inc.,* 2011 Tenn. LEXIS at *3 (Tenn. Workers Comp. Panel Jan. 28, 2011) (Holding that an employee's knee injury suffered while rising from his chair to retrieve files on a shelf at work was not compensable).

In *Ownby v. Marriott Hotel Servs.,* 2007 Tenn. LEXIS 437 (Tenn. Workers' Comp. Panel May 3, 2007), the Panel affirmed an award of workers' compensation benefits to an employee who suffered injury when she tripped on carpet. In *Ownby*, the employee "testified that she walked down an aisle and 'her feet caught on the carpet' causing her to fall." *Id.* at *2. Additionally, the *Ownby* Court noted that the employee and others had previously tripped on the same area of carpet.

Here, Ms. Mendez testified that her left foot caught in a grout line causing her ankle to "roll," which resulted in her falling to the floor. Ms. Mendez admitted that no items had been spilled on the floor but maintains, similarly to the facts in *Ownby*, that the poor condition of the floor caused her to fall. The Court does not find her argument persuasive for several reasons.

4

First, the video evidence does not show a hazardous condition. The Court observed the condition of the floor through review of the surveillance video. Through "Camera 2" and "Camera 4" on the video, the Court observed cracks in the area around the entrance of the store. (Exh. K). With the exception of the view from these two cameras, the Court did not see visible damage to any of the tile in the front of the store when it reviewed the surveillance video. (Exh. K). The Court also did not observe any cracks in the area where Ms. Mendez fell. (Exh. J).

Second, the Court observed several people working in the area where Ms. Mendez fell. The Court saw that floor tiles and grout lines did not alter the employees' actions or the motion patterns of their work instruments. An employee swept the floor in the area around the hot-food self-service line shortly before Ms. Mendez fell. (Exh. J at 15:17:56-15:18:07). The undersigned observed that the broom did not appear to sink further into the floor when it passed over the grout line than it did when it swept over other parts of the floor. Another employee pushed a soda-laden cart over the floor in the same area after Ms. Mendez fell. In the video, the sodas on the cart did not shift or shake when the cart passed over the grout line. *Id.* at 15:46:56 to 15:46:59.

Finally, the *Ownby* decision does not support Ms. Mendez's cause. The facts here divert from those in *Ownby* because Ms. Mendez did not testify that she or other employees previously tripped in the area where she fell. Ms. Mendez did testify that other employees commented on the condition of the floor. However, she did not identify these employees or call them as witnesses. Further, the Panel decided *Ownby* under previous workers' compensation law that required the courts to resolve any reasonable doubt in favor of the employee. *See White v. Werthan Indus.*, 824 S.W.2d 158, 159 (Tenn. 1992). The current law provides "…this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially…and shall not be construed in a manner favoring either the employee or the employer." Tenn. Code Ann. § 50-6-116 (2014). Based on this principle as well as the documentary evidence and testimony, the Court denies Ms. Mendez's claim for temporary disability and medical benefits. The Court further holds that her claim is not compensable.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Mendez's request for temporary disability and medical benefits is denied.

2. This is not a final order.

3. **This matter is set for Initial Hearing via teleconference on May 12, 2015, at 10 a.m. (CDT). Instructions on how to participate in the teleconference are included below.**

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary**

5

**confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**Entered on this the 4th day of March, 2015.**

Joshua Davis Baker
Workers' Compensation Judge

INITIAL HEARING:

An Initial Hearing has been set with Judge Joshua Davis Baker, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Standard Time (CST).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

6

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of March, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Marc Walwyn | | | | | X | Marc@walwynlaw.com |
| David Deming | | | | | X | ddeming@manierherod.com |

**Penny Shrum, Clerk**
**Tennessee Court of Workers' Compensation Claims**